Case 4:14-cv-01374   Document 34   Filed in TXSD on 03/30/16   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
March 31, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CALVIN JENKINS, | § | |
| TDCJ No. 190030, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-14-1374 |
| | § | |
| J MANNING, *et al*, | § | |
| | § | |
| Defendants. | | |

## MEMORANDUM AND ORDER

Plaintiff Calvin Jenkins ("Jenkins"), TDCJ #190030, is an inmate in custody of the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ-CID"). Jenkins has filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 against Defendant Officer Jesses Manning ("Manning") of the Humble Police Department, alleging that Manning used excessive force in the course of arresting him for burglary. Pending is Manning's Motion for Summary Judgment (Docket Entry No. 30). After reviewing the motion, response, summary judgment evidence, and applicable law, the Court concludes that this case must be dismissed for the reasons that follow.

I.  Background

A.  Undisputed facts

In the early morning hours of July 1, 2013, Jenkins and his accomplice, Donald Harris ("Harris") decided to break into the Ashley Furniture Store located on State Highway 59 in Humble, Texas, in order to steal money or other valuables.[1] Jenkins and Harris stole a Dodge truck and proceeded to the furniture store with burglary tools Jenkins had previously obtained at

---

[1] Jenkins Deposition, Docket Entry No. 30-3 at 24:10-24.

a Wal-Mart.[2] Jenkins used a wedge and a crowbar to break into the back door of the store, which set off a silent alarm.[3] Jenkins and Harris located two safes inside the store and were in the process of removing them with a sledgehammer when the store phone rang, which alerted them that they had to move quickly to avoid getting caught by the police.[4]

By the time Jenkins had gone to the truck to crank it up and Harris had gathered the tools and a safe, Harris spotted a police car approaching and told Jenkins that a "law man" was pulling up.[5] Manning, the Humble Police Department officer who had responded to the silent alarm, got out of his patrol car and ordered Jenkins and Harris to "get on the ground" or "stop."[6] Jenkins and Harris then took off running in different directions.[7]

Manning pursued Jenkins, who was fleeing towards State Highway 59 and made it about halfway across.[8] Jenkins was nearly hit by a truck in the process of trying to cross the southbound lanes.[9] Jenkins decided at that point to lie down or crouch on the ground near the guardrail in or around the high occupancy vehicle ("HOV") lane in the center of the highway between the northbound and southbound lanes.[10] At some point while Jenkins attempted to get away from Manning or was resisting arrest, Manning shot Jenkins in the elbow and used mace to

---

[2] *Id.* at 25:3-25, 28:13-20.

[3] *Id.* at 29:17-30:24.

[4] *Id.*

[5] *Id.* at 30:24-31:4; Manning Affidavit, Docket Entry No. 30-8 at 000167.

[6] Jenkins Deposition, Docket Entry No. 30-3 at 31:11-16.

[7] *Id*. at 32:21-24.

[8] *Id.* at 35:19-22.

[9] *Id.* at 35:21-25.

[10] *Id.* at 36:17-20.

try to subdue Jenkins. Jenkins was eventually arrested and pled guilty to assaulting a peace officer.[11] Jenkins admitted that the peace officer he was convicted of assaulting was Manning.[12] Jenkins received an eight year sentence for that crime.[13]

### B.     Jenkins's account of the arrest

Jenkins alleges that Manning shot him when Jenkins had put his arm on the guardrail trying to get over and across the highway.[14] He contends that he crossed the freeway but decided it was too dangerous to continue and got to his knees and "was on the ground not resisting" and had "decided to surrender."[15] At his deposition, Jenkins denied assaulting Manning in the course of Jenkins's arrest and contended that he only pled guilty because his lawyer had pressured him.[16]

Jenkins contends that Manning used excessive force by shooting him in the elbow in the course of arresting Jenkins. For relief, Jenkins asks that the criminal charge against him be dropped, and he seeks lifetime medical, punitive damages, loss of wages, mental damages, and compensatory damages.[17]

### C.     Manning's account of the arrest

Manning contends that he chased Jenkins, who had turned to flee northbound, and that Jenkins tripped as he turned north on the south main lanes entrance to the freeway. Manning

---

[11] *Id.* at 63:10-12.

[12] *Id.* at 64:5-7.

[13] *Id.* at 64:3-4.

[14] *Id.* at 36:3-11.

[15] Second Amended Complaint, Docket Entry No. 28 at 4-5.

[16] Jenkins Deposition, Docket Entry No. 30-3 at 47:15-17, 63:19-64:4.

[17] Second Amended Complaint, Docket Entry No. 28 at 4.

maintains that he went to the ground with Jenkins in order to arrest him, but that Jenkins aggressively resisted arrest.[18] Manning was unable to get Jenkins's hands behind his back and to overpower Jenkins physically, and so he decided to deploy pepper spray in an attempt to gain Jenkins's compliance.[19] But in order to get the pepper spray, Manning had to roll to his side, which gave Jenkins the opportunity to roll and get on top of Manning.[20] At this point, Jenkins struck Manning with his fist and Manning, on his back, on a busy highway, with pepper spray in his eyes, feared for his life.[21] He unholstered his gun and fired two shots towards Jenkins, one of which struck Jenkins in the elbow. Several back-up officers arrived and secured the scene.[22]

Manning moves for summary judgment, contending that Jenkins's claims are barred by *Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994), because Jenkins's complaint is based upon a version of facts that is inconsistent with his judicial plea of guilty that would call into question Jenkins's criminal conviction if Jenkins were to prevail in this lawsuit. Manning also asserts the defense of qualified immunity. Manning has attached summary judgment evidence in support of his *Heck* argument and qualified immunity defense. Jenkins has not filed a response in opposition to Manning's motion.

## II. Standard of Review

### A. PLRA

Jenkins's complaint is subject to screening under the Prison Litigation Reform Act (PLRA), which requires a district court to scrutinize claims in a civil action brought *in forma*

---

[18] Manning Affidavit, Docket Entry No. 30-8 at Bates 000167-168.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

4 / 11

*pauperis* by a prisoner and dismiss the complaint, in whole or in part, if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A reviewing court may dismiss a complaint for these reasons "at any time" "on its own motion or on the motion of a party" where the plaintiff proceeds *in forma pauperis.* 42 U.S.C. § 1997e(c); 28 U.S.C. §1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief").

Pleadings filed by *pro se* litigants must be construed under a less stringent standard of review. *See Haines v. Kerner,* 404 U.S. 519 (1972). Under this standard, a court liberally construes a document filed *pro se*. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### B. Summary Judgment

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the burden of initially raising the basis of the motion and identifying the portions of the record demonstrating

the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.,* 950 F.2d 272, 276 (5th Cir.1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.,* 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner,* 18 F.3d 1285, 1295 (5th Cir.1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *United States v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir.1994).

**III.    Discussion**

    **A.    Favorable termination rule set forth in *Heck v. Humphrey***

*Heck v. Humphrey* bars any cause of action under § 1983, regardless of the type of relief sought, that would necessarily imply the invalidity of the plaintiff's conviction or sentence, unless the conviction has previously been invalidated through proper channels. 512 U.S. at 486–87; *Kutzner v. Montgomery County*, 303 F.3d 339, 340 (5th Cir. 2002). Before a plaintiff can pursue a claim for damages arising from allegedly unlawful actions which, if proven, would also show the plaintiff's conviction or sentence to be invalid, the plaintiff must first show that his conviction or sentence has been reversed on appeal, expunged by executive order, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck*, 512 U.S. at 486–87.

Jenkins claims that Manning violated his constitutional rights by using excessive force in the course of his arrest by shooting him in the elbow. Although Jenkins now asserts that he did not assault Manning and was not resisting arrest when he was shot, his guilty plea is a judicial admission to the contrary. "Factual assertions in pleadings are . . . judicial admissions conclusively binding on the party that made them." *Daigre v. City of Waveland, Miss.*, 549 F. App'x 283, 286 (5th Cir. 2013) (per curiam) (unpublished) (quoting *Davis v. A.G. Edwards &*

*Sons, Inc.,* 823 F.2d 105, 108 (5th Cir.1987) (alterations and citation omitted)).

Where, as here, a plaintiff denies that he assaulted a peace officer in contravention of his guilty plea, and the excessive force claim is necessarily inconsistent and inseparable from the related conviction for assault, the plaintiff's civil action is barred by *Heck*. *See DeLeon v. City of Corpus Christi*, 488 F.3d 649, 657 (5th Cir. 2007); *Diagre,* 549 F. App'x 283 at 286 ; *but see Bush v. Strain,* 513 F.3d 492, 497 (5th Cir. 2008) (holding that *Heck* did not bar plaintiff's claim where the factual basis of the conviction was temporally and conceptually distinct from the excessive force claim)).

In *DeLeon*, the plaintiff pled guilty to aggravated assault of a police officer and later brought a civil action under section 1983 alleging that the police officer had used excessive force in shooting him four times in the course of his arrest. 488 F.3d at 651-52. The Fifth Circuit, in reviewing the motion to dismiss, noted that the plaintiff had denied the factual basis of his guilty plea and had not alleged that his excessive force claim was separable from his aggravated assault on the officer. *Id.* at 656-57.

Similarly, in *Daigre*, the plaintiff pled guilty to resisting arrest and later sued the officers for excessive force. 549 F. App'x at 285. The Fifth Circuit held that the plaintiff's claim was barred by *Heck* because her complaint contained several statements that contradicted her plea of guilty and her broad claims of innocence related to the entire arrest encounter. *Id.* at 286-87.

Like the plaintiffs in *DeLeon* and *Daigre*, Jenkins denies the factual basis for his guilty plea of assaulting a peace officer and presents his claim as a single violent encounter throughout which the officer allegedly used excessive force in the course of arresting Jenkins. Jenkins's complaint is based upon a version of facts that is wholly inconsistent with his judicial plea of guilty and does not allege that his claims of excessive force are separable from his assault of the

officer. *See DeLeon*, 488 F.3d at 656. Jenkins's attempt to challenge to his conviction through a civil lawsuit is also evident by the relief he seeks: that the *criminal charge* be dropped.[23] Because a judgment favorable to Jenkins on his present civil rights claims would necessarily imply the invalidity of his conviction and sentence, his present civil rights claims against Manning are barred by *Heck*.

### B. Qualified Immunity

Qualified immunity generally shields public officials acting within the scope of their authority from civil liability. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). As a result, courts will not deny qualified immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate," *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2083 (2011). Therefore, a plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id*. at 2080 (citation omitted). "Whether a defendant asserting qualified immunity may be personally liable turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law." *Fraire v. City of Arlington,* 957 F.2d 1268, 1272 (5th Cir.1992). When a defendant raises the defense of qualified immunity, the plaintiff bears the burden to negate the defense once it is properly raised. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Bazan ex rel. Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001)).

"A police officer may not seize an unarmed, nondangerous suspect by shooting him in

---

[23] Second Amended Complaint, Docket Entry No. 28 at 4.

the head." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Deadly force is only a constitutional option when an "officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Id.* The claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Garner*, 471 U.S. at 8. The objective reasonableness of a Fourth Amendment seizure "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. This requires analyzing the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." *Id.*

Even if Jenkins's claims were not barred by *Heck*, Manning is entitled to qualified immunity because the summary judgment record indicates that Manning's actions neither violated Jenkins's clearly established constitutional rights nor were objectively unreasonable. All agree that Jenkins was fleeing the scene of a felony and had refused to stop when Manning ordered him to do so. Jenkins recounts that he fled across a major highway, was nearly killed by an oncoming truck, and determined that it was such a dangerous situation that he should surrender.[24] Jenkins also admits that he attempted to evade Manning's efforts to arrest him[25] and that Manning thought Jenkins was resisting arrest.[26] Jenkins admits further that there was probable cause for Manning to believe that Jenkins engaged in criminal conduct which subjected

---

[24] Jenkins Deposition, Docket Entry No. 30-3 at 36:3-11.

[25] Jenkins's Responses to Requests for Admission, Docket Entry No. 30-1, RFA no. 5.

[26] Jenkins's Deposition, Docket Entry No. 30-3 at 44:22.

him to arrest, and that law enforcement officers of reasonable competence could rightfully disagree about whether Officer Manning's conduct was appropriate in the circumstances of this case.[27]

Manning submits an affidavit wherein he testifies that, upon encountering the suspects exiting the Ashley Furniture back door, Manning yelled "police stop" several times as the two suspects fled the scene.[28] He recounts that he ran through the bushes pursuing the suspects, continuing to yell "police stop" as the suspects crossed the northbound service road of highway 59.[29] Manning testified further that he chased Jenkins, the suspect who had turned to flee northbound, and that Jenkins tripped as he turned north on the south main lanes entrance to the freeway.[30] Manning testified that he went to the ground with Jenkins in order to arrest him, but that Jenkins resisted aggressively.[31]

Manning also testified that he was unable to get Jenkins's hands behind his back and to physically overpower Jenkins.[32] Manning recounts that he made the decision to deploy pepper spray in an attempt to gain compliance. But in order to get the pepper spray, Manning had to roll to his side, which gave Jenkins the opportunity to roll and get on top of Manning. Manning testified that Jenkins struck him with his fist and that Manning, then alone without back-up, on his back, on a busy highway, with pepper spray in his eyes, feared for his life. He unholstered his gun and fired two shots towards Jenkins. Several back-up officers then arrived and secured

---

[27] Docket Entry No. 30-1, RFA nos. 7, 17

[28] Manning's Affidavit, Docket Entry No. 30-8 at Bates 000167.

[29] *Id.* at Bates 000167-168.

[30] *Id.*

[31] *Id.*

[32] *Id.*

the scene.[33]

Jenkins does not respond to Manning's affidavit or motion for summary judgment. In his deposition, Jenkins denies assaulting Manning, but, as discussed, he judicially admitted that he struck Manning when he pled guilty to assaulting him. Jenkins does not controvert that there was some struggle and that he fled to a dangerous area in the middle of the highway. Manning properly raised the defense of qualified immunity and supported it with evidence, and Jenkins does not meet his burden to show that Manning's actions were unreasonable or that they involved a violation of Jenkins's clearly established constitutional rights. Accordingly, Manning is entitled to qualified immunity on Jenkins's claims.

### IV.  Conclusion and Order

Based on the foregoing, the Court **ORDERS** that:

1. Defendant's Motion for Summary Judgment (Docket Entry No. 30) is **GRANTED**, and Plaintiff's claims against Officer Manning are **DISMISSED** with prejudice.

2. Plaintiff shall take nothing on his claims.

3. All other pending motions in this case, if any, are **DENIED**.

The Clerk will send copies of this Order to the parties.

SIGNED at Houston, Texas, this 30th day of March, 2016.

*[signature]*
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

---

[33] *Id.*